

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| GEORGE E. MEDELLIN,<br><br>    Petitioner,<br><br>    v.<br><br>ROBERT A. HOREL, Warden,<br><br>    Respondent. | No. CV 06-4053-SJO (AGR)<br><br>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION |

Pursuant 28 U.S.C. § 636, the Court has reviewed the entire file de novo, including the magistrate judge's Report and Recommendation. The Court agrees with the recommendation of the magistrate judge.

IT IS ORDERED that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: 1/13/08

S. JAMES OTERO
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE E. MEDELLIN,<br>Petitioner,<br>v.<br>ROBERT A. HOREL, Warden,<br>Respondent. | NO. CV 06-4053-SJO (AGR)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

The Court submits this Report and Recommendation to the Honorable S. James Otero, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California. For the reasons set forth below, the Magistrate Judge recommends the Petition for Writ of Habeas Corpus be denied.

///
///
///
///
///
///

I.

## SUMMARY OF PROCEEDINGS

On July 1, 2002, a Los Angeles County Superior Court jury convicted Petitioner of one count of willful, deliberate, premeditated attempted murder; and possession of a firearm by a felon. (Petition at 2; Answer at 1; Lodged Document ("LD") 3 at 82.) The jury also found true that Petitioner used and discharged a firearm in the commission of the attempted murder, and that he committed both crimes for the benefit of a criminal street gang. (*Id.*) On July 19, 2002, the court sentenced Petitioner to 44 years to life. (*Id.*)

On December 4, 2003, the California Court of Appeal affirmed Petitioner's conviction. (LD 3.) On February 18, 2004, the California Supreme Court denied review without explanation. (LD 5.) On April 27 and May 10, 2005, Petitioner filed two identical writs of habeas corpus in the Los Angeles Superior Court, which were denied on May 11, 2005. (Petitioner's Response to Supplemental Motion to Dismiss, Ex. A; LD 6, 7.) On May 23, 2005, Petitioner filed a writ of habeas corpus in the California Court of Appeal, which was denied on July 28, 2005. (LD 8, 9.) On August 5, 2005, Petitioner filed a writ of habeas corpus in the California Supreme Court, which was denied on May 24, 2006, without explanation. (LD 10, 11.)

On June 27, 2006, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody in this Court in which he raised five grounds, the fifth of which Petitioner abandoned on January 8, 2007, because it was unexhausted. The four remaining grounds are: (1) his trial counsel was ineffective for not requiring victim Anthony Hayes to testify; (2) his appellate counsel was ineffective for not raising the issue in Ground One on direct appeal; (3) his trial counsel was ineffective for failing to request a jury instruction on the lesser included offense of "attempted assault"; and (4) his appellate counsel was ineffective for not raising the issue in Ground Three on direct appeal.

On March 1, 2007, Respondent filed a motion to dismiss on the ground that the petition was time-barred. On April 6, 2007, Petitioner filed a response. On April 10, 2007, the Court denied the motion to dismiss without prejudice.

On May 9, 2007, Respondent filed an answer, admitting that the petition was timely. On October 3, 2007, Petitioner filed a reply, a motion for leave to amend his petition to add a new ground that there was insufficient evidence of Petitioner's specific intent to kill, a necessary element of attempted murder, and a motion for evidentiary hearing.[1] On November 8, 2007, Respondent filed an opposition to the motion to amend.

This matter was taken under submission and is now ready for decision. Because the Court recommends denying the motion to amend, it addresses the merits of the four grounds in the original petition.

## II.

## STATEMENT OF FACTS

Below are the facts set forth in the first California Court of Appeal decision on direct review. To the extent an evaluation of Petitioner's claims for relief depends on an examination of the record, the Court has made an independent evaluation of the record specific to Petitioner's claims for relief.

> On July 8, 2000, sometime between about 2:30 and 2:45 p.m., Robin Delaney was watering the lawn at his house in Pacoima where his wife, Carol Davis, their two children, and Anthony Hayes, Davis's cousin, also resided. Davis was outside conversing with Charlene Hall, their landlord. Delaney and Davis were preparing to move, because of two recent shooting incidents, respectively, on June 28 and 29, during which incidents the shooter, who might have been appellant, shot at Delaney outside his house.

---

[1] The Court denied Petitioner's motion for an evidentiary hearing in a separate order.

3

Appellant "roll[ed] by [the house] in a car" and then returned on foot. When he told Delaney that he had heard he "snitched on" appellant, Delaney denied knowing what he meant. He accused Delaney of "snitching ... and telling the cops on" him. Appellant appeared to have a gun in his pants and under his shirt. After Davis and Hall went inside the house, he told Delaney that he was going "down the street" to the house of a guy named "Flood" but would "be back to talk to" Delaney.

After appellant took a couple of steps, Hayes yelled, "Why [do] you always come over to start stuff at my people['s] house?" After asking "What [did] you say," appellant pulled out a gun and fired 12 to 13 times at the front doorway as Delaney and Hayes ran into the house. Hayes was shot in the leg and toe. Thirteen spent bullet casings and three spent rounds were recovered from around the house.

Delaney and Davis identified appellant to the police. Davis and Hall, who had never seen appellant before this incident, each selected appellant's photograph from a lineup.

Expert testimony was presented to show that the July 8 shooting was gang-related. Appellant was a member of the Pacoima Vaughn Street gang (Vaughn Street), and his moniker was "Grouchy." Homicide, attempted murder, assault with a deadly weapon, selling narcotics, and witness intimidation are some of the crimes committed on behalf of Vaughn Street in its territory by its members, the commission of which earns the gang members respect and status.

Although Delaney, Davis, and Hayes were not gang members, the Delaney house was in the heart of Vaughn Street territory. The house was also a hangout for the Black gang known as Every Woman's Fantasy (EWF), which contested Vaughn Street for control of the area. Shooting at a hangout frequented by EWF members thus would benefit Vaughn Street.

4

> Delaney, who feared Vaughn Street, testified that he was a car detailer and he denied selling drugs from his house or that drugs were used there. Davis also denied drugs were bought or used at their house and further denied that she and Delaney were framing appellant, because he was a competing drug dealer.
>
> Appellant relied on the defenses of mistaken identity, alibi, and on the theory that he was being framed by Delaney. Ronald Gasca, a Vaughn Street gang member, testified that at the time of the July 8 shooting, he and appellant were in a nearby field where appellant was going to sell him some marijuana. Appellant was not the shooter. He testified that Delaney, whom he had known about 15 years, was a member of the Original Valley Gangsters, which got along with Vaughn Street but not EWF. Delaney sold marijuana and rock cocaine, and drugs were used at his house. Appellant, as a Vaughn Street gang member, also sold drugs in this area. At one time, Gasca set up an arrangement whereby Delaney agreed only to sell drugs on the corner in front of his house.

(LD 3 at 83-84.)

## III.

## DISCUSSION - MOTION TO AMEND

### A. Legal Standard

Rule 11 of the Rules Governing Section 2254 Cases permits application of the Federal Rules of Civil Procedure "to the extent that they are not inconsistent with any statutory provisions or these rules." In addition, 28 U.S.C. § 2242 provides that habeas petitions "may be amended . . . as provided in the rules of procedure applicable to civil actions." Thus, Fed. R. Civ. P. 15 ("Rule 15") governs requests to amend a habeas petition and "allows pleading amendments with 'leave of court' any time during a proceeding." *Mayle v. Felix*, 545 U.S. 644, 655, 125 S. Ct. 2562, 126 L. Ed. 2d 582 (2005) (quoting Rule 15(a)).

5

The Antiterrorism and Effective Death Penalty Act of 1996 provides a one-year statute of limitations for filing a habeas petition in federal court. 28 U.S.C. § 2244(d). The limitations period may begin on the date a petitioner's conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time spent in state court pursuing collateral relief may be statutorily tolled. 28 U.S.C. § 2244(d)(2).

"Amendments made after the statute of limitations run relate back to the date of the original pleading if the original and amended pleadings "ar[i]se out of the [same] conduct, transaction, or occurrence." *Mayle*, 545 U.S. at 655 (quoting Rule 15(c)(2)).

In *Mayle*, the court held that the relation back rule in habeas cases is the same as it is in other civil cases. *Id.* at 664. "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id.* (footnote omitted).[2]

**B.   Analysis**

Petitioner acknowledges that *Mayle* governs his request to amend. However, he does not address the issue of whether the proposed ground relates back to the original petition.[3] Respondent, on the other hand, argues that Petitioner's motion should be denied "because the sufficiency of the evidence claim does not 'relate back' to Petitioner's ineffective assistance of trial and appellate counsel claims." (Opposition at 9.)

It is clear that unless Petitioner's new ground relates back to the original petition, it would be time-barred. The one-year limitations period began to run

---

[2] *Mayle* rejected the Seventh and Ninth Circuits' interpretation of the meaning of Rule 15(c)(2) in the context of habeas, which had held that a new claim relates back "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence." *Id.* at 656-57. The Supreme Court also noted, without express approval, that the majority of circuits found that a claim will not relate back "when the new claims depend upon events separate in "both time and type' from the originally raised episodes." *Id.* at 657 (citation omitted).

[3] Petitioner's explanation as to why he did not include the proposed ground in his original petition is it was "inadvertently left out." (Motion to Amend at 2.)

6

1  when Petitioner's conviction became final on May 18, 2004, ninety days after the
2  California Supreme Court denied review on direct appeal. (LD 5 (February 18,
3  2004 + 90); *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Absent
4  tolling, the limitations period would have expired one year later on May 18, 2005.
5  Statutory tolling began at the earliest on April 16, 2005, when Petitioner mailed
6  his first state habeas petition for filing. (Petitioner's Response to Supplemental
7  Motion to Dismiss, Ex. A); *Saffold v. Newland*, 250 F.3d 1262, 1265 (9th Cir.
8  2000) (the "mailbox" rule applies to state and federal habeas petitions), *vacated*
9  *on other grounds by Carey v. Saffold*, 536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed.
10 2d 260 (2002). As of April 16, 2005, 333 days of the limitations period had
11 already elapsed (May 18, 2004, to April 16, 2005); 32 days remained. Statutory
12 tolling ended on May 24, 2006, when the California Supreme Court denied his
13 state habeas petition. (LD 11.) Thus, June 25, 2006, was the conclusion of the
14 one-year limitations period (May 24, 2006, + 32). Assuming the petition was
15 mailed on June 16, 2006 (based on the proof of service attached to the petition),
16 the petition was timely. *Saffold*, 250 F.3d at 1265). However, any amendment
17 filed after June 25, 2006, that does *not* relate back to the original claims in the
18 petition would be time-barred.
19     For the purpose of deciding the motion to amend, Respondent correctly
20 states that the relevant grounds in the petition are One and Three as the facts in
21 Grounds Two and Four are duplicative because they allege ineffective assistance
22 of appellate counsel for trial counsel's alleged deficiencies in Grounds One and
23 Three.
24     Ground One alleges that Petitioner's trial counsel should have required
25 victim Anthony Hayes to testify on Petitioner's behalf because Hayes would have
26 "clearly established that the petitioner was not the alleged perpetrator against Mr.
27 ///
28 ///

Anthony Hayes."[4] (Petition, 5 of 10 at 1.) Ground Three alleges that Petitioner's trial counsel should have requested a jury instruction that would have permitted the jury to convict him of "attempted assault." (*Id.*, 6 of 10 at 1.)

Petitioner's proposed new ground alleges there was insufficient evidence of Petitioner's intent to kill necessary to convict him of attempted murder. The new ground is not "tied to a common core of operative facts" of Grounds One and Three. Ground One involves the testimony of the victim Hayes who, according to Petitioner, would show he was not guilty because Hayes would have testified that it was not Petitioner who shot at him. (Reply at 5.) Ground Three involves providing the jury with a means of finding Petitioner guilty of a lesser crime because the evidence would not have established a "completed assault." (*Id.*) By contrast, insufficiency of the evidence of intent to kill involves facts – or the absence of facts – that are discrete from those underlying Grounds One and Three. According to Petitioner, "[s]ince no one was seriously injured, no threats to kill or harm uttered, or previously expressed, and no evidence presented that Petitioner and Hayes or Delaney were engaged in a gang war, there was no substantial evidence that Petitioner harbored the specific intent to kill." (Motion to Amend at 3.) These facts have nothing to do with whether Petitioner shot at Hayes or whether his crime was in fact an "attempted assault."

In habeas petitions, "'it is the relationship of the facts to the claim asserted that is important.'" *Mayle*, 545 U.S. at 655 (quoting from Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469)). Because the facts supporting Grounds One and Three are not the same "operative facts" that support the proposed new ground, the proposed ground does not relate back to the filing date of the original petition. Because the new ground was not raised

---

[4] Petitioner states that his counsel should have "mandated" that the prosecutor produce Hayes (Petition, 5 of 10 at 1), but because counsel has no legal authority to compel the prosecutor to produce a witness, the Court assumes Petitioner means his counsel should have called Hayes as a defense witness.

until October 3, 2007, more than a year after the statute of limitations had expired, the motion to amend should be denied because the new ground would be time-barred.

## IV.
## STANDARD OF REVIEW OF PETITION

A federal court may not grant a petition for writ of habeas corpus by a person in state custody with respect to any claim that was adjudicated on the merits in state court unless it (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Woodford v. Visciotti*, 537 U.S. 19, 21, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam).

"'[C]learly established Federal law' . . . is the governing legal principle or principles set forth by the Supreme Court at the time the state court rendered its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). A state court's decision is "contrary to" clearly established Federal law if (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts . . . materially indistinguishable" from a decision of the Supreme Court but reaches a different result. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002). A state court's decision cannot be contrary to clearly established Federal law if there is a "lack of holdings from" the Supreme Court on a particular issue. *Carey v. Musladin*, 127 S. Ct. 649, 654, 166 L. Ed. 2d 482 (2006).

Under the "unreasonable application" prong of section 2254(d)(1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle

was announced." *Lockyer*, 538 U.S. at 76; *see also Woodford*, 537 U.S. at 24-26 (state court decision "involves an unreasonable application" of clearly established federal law if it identifies the correct governing Supreme Court law but unreasonably applies the law to the facts).

A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle . . . to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (citation omitted). "The state court's application must have been 'objectively unreasonable.'" *Id.* (citation omitted); *see also Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir.), *cert. denied*, 540 U.S. 968 (2003).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *see also Mitleider v. Hall*, 391 F.3d 1039, 1046 (9th Cir. 2004), *cert. denied*, 545 U.S. 1143 (2005).

In applying these standards, this Court looks to the last reasoned State court decision. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006). To the extent no such reasoned opinion exists, as when a state court rejected a claim in an unreasoned order, this Court must conduct an independent review to determine whether the decisions were contrary to, or involved an unreasonable

application of, "clearly established" Supreme Court precedent. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). If the state court declined to decide a federal constitutional claim on the merits, this Court must consider that claim under a *de novo* standard of review rather than the more deferential "independent review" of unexplained decisions on the merits authorized by *Delgado*. *Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) (standard of *de novo* review applicable to claim state court did not reach on the merits).

## V.

## **DISCUSSION - PETITION**

To succeed on a claim of ineffective assistance of trial counsel, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Wiggins*, 539 U.S. at 521. The petitioner bears the burden of establishing both components. *Williams*, 529 U.S. at 390-91; *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). "Deficient performance is performance which is objectively unreasonable under prevailing professional norms." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 688). Prejudice "focuses on the question whether counsel's deficient performance renders the . . . proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993); *Williams*, 529 U.S. at 393 n. 17. The Court need not address both components if Petitioner makes an insufficient showing on one of the prongs. *Strickland*, 466 U.S. at 697.

The *Strickland* test also applies to claims of ineffective assistance by appellate counsel. *See Smith v. Murray,* 477 U.S. 527, 536, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986); *see also Smith*, 528 U.S. at 285-86 ("the proper standard for evaluating [a petitioner's] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*"). The test for deficient performance is the same as

11

for trial counsel. *Id.* at 285 (petitioner "must first show that his counsel was objectively unreasonable"). To establish prejudice, a petitioner "must show a reasonable probability that, but for his counsel's [error], he would have prevailed on his appeal." *Id.* (citation omitted). Appointed appellate counsel is not required "to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983). "[A] per se rule that the client, not the professional advocate, must be allowed to decide what issues are to be pressed . . . seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id.* "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Id.* at 752.

Because no reasoned opinion exists on the four grounds, this Court has conducted an independent review to determine whether the decisions were contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent. *Delgado*, 223 F.3d at 982.

### A. Ground One - Ineffective Assistance of Trial Counsel - Witness Hayes

Petitioner argues that the prosecutor's failure to call Hayes as a witness violated his Sixth Amendment right to be confronted with the witnesses against him and that his trial counsel was deficient for failing to move for dismissal of the charges. (Petition, 5 of 10, at 1, 3.) Petitioner is incorrect. The Confrontation Clause applies to "witnesses" who "bear testimony" for "'the purpose of "establishing or proving some fact."'" *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (citation omitted). Given that the prosecutor did not seek to introduce statements of Hayes at trial, the Confrontation Clause does not apply. *See id.* at 68-69. Counsel was not

12

1 deficient for failing to move for dismissal of the charges based on the prosecutor's
2 failure to call Hayes as a witness.
3    As previously noted, the Court also construes this ground to allege that
4 Petitioner's counsel was deficient in not calling the victim Hayes as a defense
5 witness. However, Petitioner offers no support for his contention that Hayes
6 would have testified that "petitioner was not the alleged perpetrator against Mr.
7 Anthony Hayes." (Petition, 5 of 10 at1.) It is pure speculation on Petitioner's part
8 that Hayes would have testified favorably. See *James v. Borg*, 24 F.3d 20, 26
9 (9th Cir.) ("Conclusory allegations which are not supported by a statement of
10 specific facts do not warrant habeas relief."), *cert. denied sub nom. James v.*
11 *White*, 513 U.S. 935 (1994); *see also Bean v. Calderon*, 163 F.3d 1073, 1082
12 (9th Cir. 1998) (petitioner "offers no concrete support for his speculation"
13 regarding his ineffective assistance claim), *cert. denied*, 528 U.S. 922 (1999).
14    Therefore, Petitioner has not met his burden of showing prejudice. See
15 *Williams*, 529 U.S. at 390-91; *see also Grisby v. Blodgett*, 130 F.3d 365, 373 (9th
16 Cir. 1997) ("Speculation about what an expert could have said is not enough to
17 establish prejudice."); *Hendricks v. Calderon*, 70 F.3d 1032, 1042 (9th Cir. 1995)
18 ("Absent an account of what beneficial evidence investigation into any of these
19 issues would have turned up, [defendant] cannot meet the prejudice prong of the
20 *Strickland* test.") (citation omitted).
21    Petitioner's claim fails.
22    **B.    Ground Two - Ineffective Assistance of Appellate Counsel -**
23    **Witness Hayes**
24    Because Petitioner has not shown his trial counsel was deficient or that
25 Petitioner was prejudiced in Ground One, it cannot be ineffective assistance for
26 his appellate counsel to raise trial counsel's claimed ineffectiveness on direct
27 appeal. *See Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) ("A failure to
28 raise untenable issues on appeal does not fall below the *Strickland* standard.");

*Jones*, 463 U.S. at 751 (Appellate counsel is not required "to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points").

### C. Ground Three - Ineffective Assistance of Trial Counsel - Lesser Included Offense of "Attempted Assault"

Petitioner argues that his trial counsel should have requested a jury instruction on the lesser included offense of "attempted assault." (Petition, 6 of 10 at 1.)

As the California Court of Appeal stated in its order denying Petitioner's habeas petition, "California does not recognize crime of 'attempted assault.'" (LD 9 (citing to *In re James M.*, 9 Cal. 3d 517 (1973)).) In *In re James*, the California Supreme Court declared that "attempted assault" is not a crime in California. *Id.* at 519. In the common law, "an assault was defined as an attempted battery." *Id.* at 521. Because "one cannot attempt to commit an attempt, . . . attempted assault was a deductive impossibility." *Id.* Even if one circumvented this "logical absurdity," declaring "attempted assault" a crime would create "serious pragmatic difficulties," including requiring trial courts "to instruct on attempted assault in every prosecution for a crime involving any type of assault." *Id.* at 522.

Because "attempted assault" is not a crime in California, it would have been futile for trial counsel to request an instruction on it. Therefore, counsel's failure to do so cannot be deficient. Petitioner's claim fails.

### D. Ground Four - Ineffective Assistance of Appellate Counsel - Lesser Included Offense of "Attempted Assault"

Because Petitioner has not shown his trial counsel was deficient or that Petitioner was prejudiced in Ground Three, it cannot be ineffective assistance for his appellate counsel to raise trial counsel's claimed ineffectiveness on direct appeal. *See Turner*, 281 F.3d at 872 ("A failure to raise untenable issues on appeal does not fall below the *Strickland* standard."); *Jones*, 463 U.S. at 751

(Appellate counsel is not required "to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points").

## VI.

## RECOMMENDATION

For the reasons discussed above, it is recommended that the District Court issue an Order (1) adopting this Report and Recommendation; and (2) directing that judgment be entered denying the Petition.

DATED: December 3, 2007

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to file Objections as provided in the Local Rules Governing Duties of Magistrate Judges, and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.